In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1518

IN RE:
GARY CRANE and MARSA S. CRANE, *Debtors*.


APPEAL OF: JEFFREY D. RICHARDSON, *Chapter 7 Trustee*

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:12-CV-02146-MPM-DGB — **Michael P. McCuskey**, *Judge.*

No. 13-1277

IN RE: KLASI PROPERTIES, LLC, *Debtor*.


APPEAL OF: ROBERT T. BRUEGGE, *Trustee of the Estate of Klasi Properties, LLC*

Appeal from the United States Bankruptcy Court
for the Southern District of Illinois.
Nos. 12-60013 and 12-6028 — **Laura K. Grandy**, *Chief Bankruptcy Judge.*

ARGUED OCTOBER 1, 2013 — DECIDED DECEMBER 23, 2013


Before CUDAHY, RIPPLE, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Under 11 U.S.C. § 544(a)(3), a trustee in bankruptcy has the so-called "strong-arm" power to "avoid … any obligation incurred by the debtor that is voidable by—a bona fide purchaser of real property … from the debtor … ." In these two appeals, we address a question that has divided bankruptcy courts in Illinois and pitted mortgage lenders against unsecured creditors. The question is whether, before a 2013 amendment to the Illinois mortgage recording statute, a bankruptcy trustee could use the strong-arm power to avoid a mortgage recorded in Illinois on the ground that the mortgage did not state on its face either a maturity date or an interest rate. Our answer is no. The Illinois statute on the form for recorded mortgages upon which the trustees base their strong-arm efforts, 765 Ill. Comp. Stat. 5/11 (2012), was written in permissive rather than mandatory terms. The absence of a maturity date and/or an interest rate did not allow a bankruptcy trustee to avoid a mortgage under the pre-amendment version of 765 ILCS 5/11. Accordingly, we affirm the judgment of the district court in the *Crane* case, No. 13-1518, and the judgment of the bankruptcy court in the *Klasi Properties* case, No. 13-1277.

I.   *Factual and Procedural Background*

The debtors in both appeals, Gary and Marsa Crane and Klasi Properties, LLC, borrowed money secured by mortgages on real estate. In both cases, the mortgages were recorded by the lenders to ensure the priority of their mortgage liens. In both cases, the recorded mortgages did not state the maturity date of the secured debt or the applicable interest rate. Those terms were included in the promissory notes, of course, which were fully incorporated by reference in the mortgages.

The Cranes sought bankruptcy protection in the Central District of Illinois, and Klasi Properties sought bankruptcy protection in the Southern District of Illinois. In both cases, the trustees filed adversary complaints under 11 U.S.C. § 544(a)(3) seeking to avoid the mortgages because they did not state the maturity dates or interest rates for the secured debts. In the *Crane* case, the bankruptcy court granted summary judgment in favor of the trustee, *Crane v. Richardson (In re Crane)*, 2012 WL 669595, at *2 (Bankr. C.D. Ill. Feb. 29, 2012), but the district court reversed and granted judgment for the mortgage lender. *Crane v. Richardson (In re Crane)*, 487 B.R. 906, 915–16 (C.D. Ill. 2013). In the *Klasi Properties* case, the bankruptcy court granted summary judgment in favor of the mortgage lender. *Bruegge v. Farmers State Bank of Hoffman (In re Klasi Properties, LLC)*, 2013 WL 211111, at *8 (Bankr. S.D. Ill. Jan. 18, 2013). In light of the *Crane* case and other conflicting decisions among bankruptcy courts in Illinois, we accepted the trustee's request for direct review under 28 U.S.C. §158(d)(2)(B).[1]

---

[1] For cases holding that mortgages were enforceable despite the absence of some terms listed in the statute, see *Bruegge v. WBCMT 2007-C33 Mid America Lodging, LLC (In re HIE of Effingham, LLC)*, 490 B.R. 800, 818–20 (Bankr. S.D. Ill. 2013) (mortgage missing interest rate and maturity date); *Banbury Metrolofts, LLC v. BMO Harris Bank, N.A. (In re Banbury Metrolofts, LLC)*, 2013 WL 1191230, at *4 (Bankr. N.D. Ill. March 25, 2013) (same); *Bank of Ill. v. Covey (In re Shara Manning Props., Inc.)*, 475 B.R. 898, 910 (Bankr. C.D. Ill. 2010) (construction lender's mortgage was valid and enforceable against debtor and second lender even if it omitted the debt amount, interest rate, and maturity date where second lender had actual notice of construction lender's mortgage; 765 ILCS 5/11 creates a "safe harbor" for mortgagees); *Richardson v. Good (In re Good)*, 2006 WL 2458817, at *2 (Bankr.

(continued...)

II.  *Analysis*

Our analysis begins with a bankruptcy trustee's "strong-arm" powers under 11 U.S.C. § 544(a)(3), which provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by … a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the

---

[1] (...continued)

C.D. Ill. Aug. 23, 2006) (mortgage that omitted interest rate and maturity date of underlying debt was valid under 765 ILCS 5/11 and could not be avoided under bankruptcy trustee's strong-arm powers); see also *Citizens Sav. Bank v. Covey (In re Pak Builders)*, 284 B.R. 650, 654–60, 662–63 (Bankr. C.D. Ill. 2002) (mortgages that incorrectly identified debtor as a corporation rather than a partnership and nature of secured debt did not prevent mortgages from giving constructive notice of mortgagee's interest sufficient to preclude trustee from avoiding mortgage under strong-arm powers). For cases holding that mortgages were not enforceable if they lacked any terms listed in the statute, see *People's Nat'l Bank N.A. v. Jones*, 482 B.R. 257, 263 (S.D. Ill. 2012) (765 ILCS 5/11 elements of form mortgage were requirements under Illinois law), *rev'd on other grounds*, *People's Nat'l Bank N.A. v. Banterra Bank*, 719 F.3d 608 (7th Cir. 2013); *Peterson v. Berg (In re Berg)*, 387 B.R. 524, 559–61 (Bankr. N.D. Ill. 2008) (mortgage that did not state debt amount, interest rate, or maturity date of loan was insufficient under 765 ILCS 5/11 and could be avoided by Chapter 7 trustee).

time of the commencement of the case, whether
or not such a purchaser exists.

For present purposes, the key is that a bankruptcy trustee may avoid any obligation or transfer of the debtor's property that a hypothetical bona fide purchaser could avoid, "without regard to any knowledge of the trustee or of any creditor." State law governs who would count as a bona fide purchaser and what constitutes constructive notice sufficient to defeat a bankruptcy trustee's section 544(a)(3) power. See *Sandy Ridge Oil Co. v. Centerre Bank N.A. (In re Sandy Ridge Oil Co.)*, 807 F.2d 1332, 1336 (7th Cir. 1986); *Brown v. Job (In re Polo Builders, Inc.)*, 433 B.R. 700, 707 (Bankr. N.D. Ill. 2010).

The question before us is therefore at bottom a question of Illinois state law. We review *de novo* the conclusions of law reached by both the district court and the bankruptcy court. *Illinois v. Chiplease, Inc. (In re Resource Technology Corp.)*, 721 F.3d 796, 799–800 (7th Cir. 2013); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010).

A bona fide purchaser in Illinois is one who acquires an "interest in [the] property for valuable consideration without actual or constructive notice of another's adverse interest in the property." *U.S. Bank N.A. v. Villasenor*, 979 N.E.2d 451, 464 (Ill. App. 2012), quoting *Goldberg v. Ehrlich (In re Ehrlich)*, 59 B.R. 646, 650 (Bankr. N.D. Ill. 1986). Actual notice is knowledge the purchaser had at the time of the conveyance, *U.S. Bank*, 979 N.E.2d at 465, but the terms of section 544(a)(3) provide that a bankruptcy trustee cannot be charged with actual notice. A trustee can be charged with constructive notice, however. *Sandy Ridge Oil Co. v. Centerre Bank N.A. (In re Sandy Ridge Oil*

*Co.)*, 832 F.2d 75 (7th Cir. 1987) (defectively recorded mortgage was sufficient under Indiana law to serve as constructive notice and to defeat debtor-in-possession's strong-arm claim under § 544(a)(3)).

Illinois defines constructive notice as knowledge that the law imputes to a purchaser, whether or not the purchaser had actual knowledge at the time of the conveyance. *U.S. Bank*, 979 N.E.2d at 465. There are two kinds of constructive notice: record notice and inquiry notice. *LaSalle Bank v. Ferone*, 892 N.E.2d 585, 590 (Ill. 2008), citing *Ehrlich*, 59 B.R. at 650. Record notice "imputes to a purchaser knowledge that could be gained from an examination of the grantor-grantee index in the office of the Recorder of Deeds, as well as the probate, circuit, and county court records for the county in which the land is situated." *Ehrlich*, 59 B.R. at 650.

The trustees argue here that the mortgages were legally insufficient to give constructive notice to hypothetical bona fide purchasers because they failed to satisfy what the trustees call the formal "requirements" in the mortgage recording statute as it existed when these debtors filed their bankruptcy petitions, 765 ILCS 5/11 (2012).[2]

---

[2] Illinois amended 765 ILCS 5/11 effective June 1, 2013 to state that the provisions regarding the form of a mortgage "are, and have always been, permissive and not mandatory," and that the failure to include the interest rate and/or the maturity date does not affect the validity or priority of the mortgage. See 2012 Ill. Legis. Serv. P.A. 97-1164, § 20. The bankruptcies underlying these appeals were filed prior to the effective date, so we apply the 2012 version of the statute. See *Miller v. La Salle Bank N.A.*, 595 F.3d 782, 788 (7th Cir. 2010) (resolving similar question involving amendments to

(continued...)

Before the 2013 amendment, the statute said in relevant part:

> Mortgages of lands may be substantially in the following form:
>
> The Mortgagor (here insert name or names), mortgages and warrants to (here insert name or names of mortgagee or mortgagees), to secure the payment of (here recite the nature and amount of indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise), the following described real estate (here insert description thereof), situated in the County of …, in the State of Illinois.
>
> Dated (insert date).
>
> (signature of mortgagor or mortgagors)
>
> …
>
> Such mortgage, when otherwise properly executed, shall be deemed and held a good and sufficient mortgage in fee to secure the payment of the moneys therein specified … .

The recorded mortgages at issue in these appeals accurately disclosed the mortgagors, the mortgagees, the amounts of

---

[2] (...continued)
Indiana recording statute). We do not decide whether the 2013 amendment should be treated as merely clarifying and applied here. We reach the same result under the 2012 version of the statute because we agree that the terms listed in section 5/11 have always been permissive rather than mandatory.

indebtedness, the descriptions of the properties subject to the mortgages, and the dates of the mortgages. The mortgages also stated that the underlying debts were secured by separate but contemporaneously-signed promissory notes. The recorded mortgages did not set forth the maturity dates or the interest rates of the underlying loans.

If all the elements set forth by in the pre-amendment form of 765 ILCS 5/11, including the interest rate and maturity date, were mandatory, the trustees would have a stronger argument that each element listed in the mortgage "form" set forth in that section, including the interest rate and maturity date of the underlying debt, would need to appear on the face of the recorded mortgage for that document to serve as effective notice of the mortgage to a potential buyer of the property. If the elements listed in section 5/11's "form" were permissive, a recording may be deemed sufficient if it contains the indispensable elements of a mortgage even if the recorded document does not include every element listed in the recording statute.

Statutory interpretation here is a question of state law, and our role is to predict how the Illinois Supreme Court would decide the question. *E.g.*, *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 615 (7th Cir. 2013) (our role in diversity action "is to predict how the state's highest court would answer the question if asked"); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (because state law applied to plaintiff's claims, "our task is to interpret the state's law as we predict the state's highest court would").

This particular question of state law has an unusually hypothetical flavor to it. We find it hard to imagine that any prospective buyers or mortgage lenders for these properties would, upon discovering the recorded mortgages in the chain of title in the county land records, conclude that the mortgages could not be enforced because the maturity dates and interest rates were missing, and go forward with a purchase or new loan without ensuring that the existing mortgages would be paid off as part of the transaction. Nevertheless, that hypothetical question of state law is the one we must answer to apply section 544(a)(3), so we proceed on that basis.

We believe the better view, and the one most likely to be adopted by the Illinois Supreme Court, is that the form set forth in section 5/11 has always been a permissive safe harbor, that the mortgages recorded in these cases supplied the indispensable elements of a mortgage under Illinois common law, and that the recorded mortgages were effective to give constructive record notice of the mortgages to potential buyers. Thus, the trustees' section 544 strong-arm powers cannot avoid the banks' recorded mortgage liens.

We begin with the language of the statute. When the language of the statute is plain, we enforce it according to its terms. *Greenfield Mills, Inc. v. Macklin,* 361 F.3d 934, 954 (7th Cir. 2004); *Unzicker v. Kraft Food Ingredients Corp.*, 783 N.E.2d 1024, 1031 (Ill. 2002). Here the statute's operative language is plainly permissive, not mandatory: "Mortgages of lands *may* be *substantially* in the following form." 765 ILCS 5/11 (emphasis added). The statute simply does not say that a recorded mortgage must set forth every element listed for the recording to be effective against third parties. Strict compliance with the

*suggested* form is not required to ensure a valid mortgage enforceable against subsequent lenders and purchasers.

The trustees have not cited, and we have not found, any Illinois cases actually holding that a recorded mortgage must state the maturity date and/or the interest rate to ensure priority over later claims. Nevertheless, the trustees find some support for their argument that the section 5/11 elements were requirements before the 2013 amendment in a few Illinois state court opinions that have referred to the section 5/11 formal elements as "requirements." For example, in *Caraway v. Sly*, 78 N.E. 588, 589 (Ill. 1906), the Illinois Supreme Court wrote: "Where the conveyance is in the form of a debt or obligation secured by it, and [a predecessor to 765 ILCS 5/11], which provides for a statutory form of mortgage, *requires* that a mortgage in that form shall recite the nature and amount of the indebtedness, showing when due and the rate of interest, and whether secured by note or otherwise." (Emphasis added.) Similarly, in *Bullock v. Battenhousen,* 108 Ill. 28, 37 (1883), the same court wrote: "The policy, though not the letter, of our statutes requires, in all cases, a statement upon the record of the amount secured. Thus, in [a predecessor to 765 ILCS 5/11], the form of the mortgage there given *requires* the mortgage to 'recite the nature and amount of indebtedness.'" (Emphasis added.)

These uses of the word "requires" do not persuade us to adopt the trustees' view. First, the elements can be described as "required" for lenders wishing to take advantage of the statute's permissive safe harbor. With that understanding, a mortgage that failed to include all statutory elements would not be entitled to the statutory safe harbor but could still

qualify for priority under the more general common law of Illinois. And in *Caraway*, the reference to the statutory elements as requirements was non-binding dictum that simply did not address the permissive statutory language. The question the court actually decided there was whether the document was a deed giving the seller an option to repurchase or was instead a mortgage. And in deciding that question, the *Caraway* court recognized that "the essential things" in a mortgage "are the existence of a debt and the intention to secure its payment." 78 N.E. at 589. Those "essential things" are present in the mortgages in these cases. In *Bullock*, the problem was that the document in question did not state or otherwise indicate the principal amount of the debt, which Illinois courts have always treated as essential for a valid mortgage.

Several other Illinois cases refer to some of the statutory elements—other than maturity date and interest rate—as "requirements." Those cases, however, do not support the trustees' contention that a recorded mortgage must include the interest rate and maturity date to give constructive record notice to a potential buyer. Though the Illinois courts have said that mortgages that did not set forth one or the other—the interest rate or the maturity date—were insufficient to provide notice, the mortgages in those cases also failed to set forth the amounts of the underlying debts, which has always been deemed essential. See, *e.g.*, *Flexter v. Woomer*, 197 N.E.2d 161, 163 (Ill. App. 1964) (recording was not sufficient where mortgage did not set forth amount of the underlying debt or maturity date); *Bergman v. Boda*, 46 Ill. App. 351, 357 (1892) (mortgage that did not recite the amount of the debt it secured did not provide record notice); cf. *Gardner v. Cohn*, 61 N.E. 492,

493 (Ill. 1901) (mortgage was sufficient to charge subsequent mortgagee with constructive notice; although the amount of the debt was not expressly stated, it could be ascertained easily from the other information provided in the recording); *Skach v. Gee*, 484 N.E.2d 441, 443 (Ill. App. 1985) (trust deeds that did not state correct principal amounts or maturity dates were valid against subsequent purchasers because they "knew what the cap was" and were therefore "on notice"). We recognize that these statements in *Flexter* and *Bergman* provide some support for the trustees' position, but in the end, we are not persuaded that the Illinois courts would have done under the prior statute what they never actually did: disregard the permissive statutory language and hold that a missing interest rate and/or missing maturity date was alone sufficient to avoid a mortgage where the essential common law elements of the mortgage were included.

Illinois statutes and cases show beyond doubt that the debt amount is an indispensable element of a mortgage and must be included in a recording, in at least some way, for the recording to be effective against a third party. See 735 ILCS 5/15-1207 (defining mortgage as "any consensual lien created by a written instrument which grants or retains an interest in real estate to secure a debt or other obligation," without reference to interest rate or maturity date); *Peterson v. Berg (In re Berg)*, 387 B.R. 524, 561 (Bankr. N.D. Ill. 2008) (mortgage did not include principal amount of indebtedness; "without some recorded indicia of reliability tying the [ ] Mortgage to the [ ] Note it is impossible to say … that it is in fact the note secured by the recorded Mortgage"); *Bullock*, 108 Ill. at 37 (explaining requirement that mortgage set out the "amount claimed to be

due" is needed to prevent "secret conspiracies between mortgagors and mortgagees").

That reasoning simply does not apply to interest rates or maturity dates, and Illinois courts have not applied it to avoid mortgages that were silent on those terms. Even if the mortgage is silent regarding the maturity date, the Illinois legislature has set thirty years as the default maturity date for mortgages. 735 ILCS 5/13-116(b) ("the lien of every mortgage … in which no due date is stated upon the face … shall cease by limitation after the expiration of 30 years from the date of the instrument creating the lien … ."). And a prospective buyer or new lender would not need to know the interest rate for the prior loan to decide whether to go forward with a new purchase or loan and what the terms should be.

The trustees have not pointed to any controlling Illinois authority indicating that a recorded mortgage that did not set forth the interest rate or the maturity date of the underlying indebtedness was not sufficient to give constructive record notice of the mortgage to a third party, and we have found none. We hold that the trustees had constructive record notice of the mortgages in both the *Crane* and *Klasi Properties* cases and were not entitled to avoid the mortgages.

To tie up a few loose ends, the mortgage lenders presented several arguments in the alternative, including whether the maturity date and interest rate were incorporated into the mortgages by reference to the associated promissory notes, and whether the mortgages were sufficient under Illinois law to give the trustees constructive inquiry notice. Because the recorded mortgages were sufficient to supply constructive

record notice, we do not address these alternative arguments. Also, the lender in the *Klasi Properties* case argued before the bankruptcy court that the trustee had waived the right to attempt to avoid the mortgage under §544(a)(3). When the lender moved for relief from the automatic stay so that it could foreclose, the trustee entered into an agreed order "conceding" that his interest was subordinate. The bankruptcy court did not address the waiver argument, but the lender renewed its argument on appeal. We reject it. An order granting a creditor relief from the automatic stay does not have preclusive effect and is not an adjudication of the substantive rights of the parties. *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990). The trustee's participation in the agreed order lifting the automatic stay was not a concession and did not operate as waiver.

*   *   *

To conclude, the recorded mortgages at issue in these appeals failed to state the interest rates and maturity dates of the underlying debts. Even so, the mortgages supplied the essential terms of a mortgage under Illinois law and were sufficient to satisfy the common law and the permissive terms of 765 ILCS 5/11. Thus, the mortgages provided constructive record notice of the mortgages to the trustees, so the trustees may not avoid the mortgages under 11 U.S.C. §544(a)(3). The judgments of the district court in *Crane*, No. 13-1518, and the bankruptcy court in *Klasi Properties*, No. 13-1277, are AFFIRMED.